UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN QUERISMA,

Plaintiff,

v. Case No. 3:26-cv-4849-TKW-HTC

CITY OF DEFUNIAK SPRINGS,

Defendant.
______________________________/

REPORT AND RECOMMENDATION

Plaintiff Jonathan Querisma, proceeding *pro se*, sues the City of DeFuniak Springs (the "City"), alleging one of its police officers retaliated against him by asking about a lawsuit he filed. Doc. 15. The City has moved to dismiss Querisma's amended complaint, arguing it fails to state a claim. Doc. 17. The Court directed Querisma to file a response if he opposed the motion; otherwise, the Court would treat it as unopposed and could grant it by default. *See* Doc. 18; *see also* N.D. Fla. Loc. R. 7.1(H). Querisma did not file a response. Regardless, after reviewing the amended complaint, the motion, and the relevant law, the undersigned finds Querisma has failed to state a claim. Thus, the motion to dismiss should be GRANTED, and this case should be DISMISSED with prejudice because Querisma has already been advised of the applicable legal standards and given an opportunity to amend. *See* Docs. 12 & 14.

Page 2 of 13

## I. Background

Querisma's amended complaint names the City as the only Defendant.[1] The amended complaint contains the following allegations.

Matthew Taylor, a City police officer, pulled Querisma's vehicle over three times based on "anonymous tips of drug trafficking," but never discovered drugs in Querisma's possession. During one of the traffic stops, Taylor removed panels from Querisma's dashboard and broke them. Querisma filed a complaint to the Chief of Police regarding the damage, as well as other complaints regarding his encounters with Taylor.

Querisma also filed a lawsuit against the City because the paint on his vehicle was scratched during the third traffic stop. While that lawsuit was pending, Taylor walked up to Querisma at a gas station while he was pumping gas and stated: "why are you stirring up trouble"; "I thought I was fair"; and "why would [you] file a lawsuit and cause problems." Querisma filed an additional complaint with the police department regarding this encounter but he "has not received so much as a phone call regarding the event(s)." In "the summer of 2025," Querisma settled the lawsuit against the City regarding the scratched paint on his vehicle.

---

[1] Querisma identifies Matthew Taylor as a Defendant one time in the statement of facts. Doc. 15 at 4. However, because Taylor is not identified as a Defendant in the case caption or the "Parties" section of the amended complaint, the undersigned does not construe the amended complaint as bringing a claim against Taylor in his individual capacity. *See* Doc. 15 at 1, 3; Doc. 15-1 at 1. Moreover, even if Querisma intended to bring an individual capacity claim against Taylor, it would fail for the reasons set forth herein.

Based on the foregoing, Querisma alleges the City is liable for retaliation under the First Amendment. As relief, Querisma seeks $250,000 in damages for emotional distress, mental anguish, and "fear/anxiety."

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must liberally construe *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. Discussion

Querisma seeks to hold the City liable for Officer Taylor's allegedly unconstitutional conduct. However, "[a]s a municipality, the City cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (finding § 1983 "cannot be

easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). Instead, to hold the City liable, Querisma must show: (1) Taylor violated his constitutional rights; and (2) the City had a policy, custom, or practice that caused the deprivation. *See Hoefling*, 811 F.3d at 1279. As discussed below, the undersigned agrees with the City that Querisma fails to allege facts sufficient to make either showing.

**A. Querisma has failed to state a First Amendment retaliation claim.**

To establish a First Amendment retaliation claim, a plaintiff must show: (1) his speech or act was constitutionally protected; (2) he suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech or act; and (3) there was a causal relationship between the adverse conduct and the protected speech or act. *Trigo v. City of Doral*, 663 F. App'x 871, 874 (11th Cir. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Here, Querisma has not alleged facts showing Taylor's conduct would deter a person of ordinary firmness from engaging in protected activity. Querisma alleges Taylor approached him at a gas station and stated: "why are you stirring up trouble"; "I thought I was fair"; and "why would [you] file a lawsuit and cause problems."[2]

[2] To the extent Querisma alleges the traffic stops Taylor initiated were retaliatory, he has not alleged facts to support a causal connection between the traffic stops and his protected speech. Because Querisma's allegations indicate he sued the City after the traffic stops, the lawsuit could not have been the catalyst for the stops. And nothing indicates Taylor was aware Querisma had engaged in protected activity before the traffic stops; instead, Querisma's allegations suggest the traffic stops were based on "anonymous tips of drug trafficking."

However, the encounter occurred at a public location and in front of at least four witnesses. Doc. 15-1 at 1. Taylor did not display his weapon or touch Querisma, and Taylor's statements were not defamatory. *Cf. Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019) (recognizing defamation can support the adverse action element of a retaliation claim).

Although Querisma alleges Taylor's conduct was an "attempt to intimidate" him (Doc. 15 at 5), that allegation is conclusory; Querisma has not alleged facts to support that characterization or to show the encounter with Taylor rose "to the level of threat, coercion, intimidation, or profound humiliation." *See Deeren v. Anderson*, 72 F.4th 229, 235 (7th Cir. 2023) ("When the alleged retaliatory act is a defendant's speech, the plaintiff must show that the speech in question rose 'to the level of threat, coercion, intimidation, or profound humiliation.'") (citation omitted). Taylor did not tell Querisma to abandon the lawsuit or imply he would suffer consequences if he failed to do so. Without such facts, Querisma has alleged, at most, that he suffered a de minimis inconvenience to the exercise of his First Amendment rights.[3] *See Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) ("to recover for

[3] In addition, while the ordinary firmness test is an objective one, the undersigned notes Querisma's encounter with Taylor at the gas station did not have any adverse effect on his lawsuit. Querisma did not feel compelled to abandon the case; instead, he indicates he reached a settlement with the City regarding his claim. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (noting the plaintiff's actual response to the retaliatory conduct "is not dispositive" but it "provides some evidence of the tendency of that conduct to chill First Amendment activity").

Page 6 of 13

retaliation, [plaintiffs] must show that the defendants' conduct resulted in something more than a 'de minimis inconvenience' to the exercise of their First Amendment rights"); *see also Wrobel v. Cnty. of Erie*, 692 F.3d 22, 32 (2d Cir. 2012) (finding sheriff deputy's questioning of plaintiff was not the type of conduct that would deter a person of ordinary firmness from exercising their constitutional rights when "the entire encounter consisted of a few polite questions, after which [plaintiff] was left alone").

Simply put, Querisma's allegations do not plausibly suggest Taylor's conduct would deter a person of ordinary firmness from engaging in protected speech. *See Bennie v. Munn*, 58 F. Supp. 3d 936, 943-44 (D. Neb. Sept. 30, 2014) (finding defendants' regulatory inquiries "that were motivated, to varying degrees, by the content of the plaintiff's speech" would not deter a person of ordinary firmness). And the City cannot be liable under § 1983 in the absence of an underlying constitutional violation. *See Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.").

**B. Querisma has failed to state a *Monell* claim against the City.**

Even assuming Taylor violated the First Amendment, Querisma has not alleged facts suggesting a policy or custom of the City caused the violation.

Querisma advances several theories for why the City should be liable, but none have merit.

First, Querisma claims Taylor was a final policymaker for the City. However, he has not alleged facts which suggest that Taylor, who appears to be a patrol officer, is responsible for establishing City policy with respect to police-citizen encounters.[4] *See AHE Realty Assoc., LLC v. Miami-Dade Cnty., Fla.*, 320 F. Supp. 3d 1322, 1339 (S.D. June 29, Fla. 2018) (dismissing § 1983 claim when plaintiff made only a conclusory allegation that official was final decisionmaker and did not cite any state or local statute or ordinance supporting the allegation). Indeed, the fact Querisma filed complaints to the police department regarding Taylor's conduct suggests that conduct was subject to review. *See Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1286 (S.D. Fla. Mar. 4, 1999) ("No final policymaking authority exists where the official's decisions are subject to, or constrained by, 'meaningful administrative review.'") (citation omitted); *see also Pando v. Blair*, 2017 WL 3835858, at *21 (M.D. Fla. Aug. 10, 2017), *report and recommendation adopted*, 2017 WL 3782813 (M.D. Fla. Aug. 31, 2017) ("Importantly, a policymaker does not delegate his authority to an employee by allowing the employee to exercise discretion, as that would be indistinguishable from respondeat superior liability.").

---

[4] This allegation is also inconsistent with other allegations which fault the City for ratifying Taylor's conduct and not providing him with additional training and supervision.

Next, Querisma asserts that the City ratified Taylor's unconstitutional conduct. *See Hoefling*, 811 F.3d at 1280 ("[A] municipality can be held liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'") (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002)). Querisma claims he filed a complaint with the police department about the gas station encounter but "has not received so much as a phone call" regarding the complaint. Doc. 15 at 5. Thus, he alleges Police Chief James Hurley "whitewashed" the "unconstitutional and retaliatory behavior." Doc. 15-1 at 3.

However, Querisma's allegations are not sufficient to support a ratification theory of municipal liability. The fact the City has not responded to Querisma's complaint of misconduct does not show the City approved of Taylor's conduct. *See Matthews*, 294 F.3d at 1297 ("The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it."). Furthermore, to hold a city liable based on the ratification of a single incident, a final policymaker must have the opportunity to review the subordinate's decision before it becomes final. *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015). And here, the City would not have had the opportunity to review Taylor's conduct at the gas station before it was "final." *See Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174-75 (11th

Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003) (finding argument that school district ratified employees' allegedly unconstitutional searches of students was "misplaced" because district "had no opportunity to ratify the decision to search the children before the searches occurred"). Also, "[t]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983[.]" *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781-82 (9th Cir. 1997) (citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.3d 649, 656 (6th Cir. 1993) ("[M]ere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification. Otherwise, the City would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from *respondeat superior* liability.").

Lastly, Querisma suggests City policymakers were aware of Taylor's misconduct, but failed to take corrective action, such as providing additional training or supervision, that would have prevented the gas station encounter. Querisma alleges he filed complaints with the police department regarding Taylor's traffic stops and the gas station encounter. He also alleges other citizens have filed "numerous" complaints about their "questionable encounters" with Taylor.

These allegations, however, do not support a municipal liability claim for several reasons. First, Querisma's allegations regarding the complaints are conclusory. While he says he complained about Taylor's traffic stops, he does not describe how the traffic stops violated the Constitution. Similarly, while Querisma claims other citizens have filed "numerous" complaints about their "questionable encounters" with Taylor, he provides no details regarding those complaints.

Second, Querisma does not allege his or the other citizens' complaints involved an incident like the gas station encounter at issue here. Complaints about misconduct during a traffic stop would not have put the City on notice that Taylor was likely to retaliate against Querisma for filing a lawsuit.[5] *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) ("Because those incidents are not similar to the violation at issue here, they could not have put [the defendant] on notice that specific training was necessary to avoid this constitutional violation."); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (a plaintiff must show "the municipality knew of a need to train and/or supervise *in a particular area* and the municipality made a deliberate choice not to take any action") (emphasis added).

Third, Querisma has not alleged there has been a finding of misconduct in response to any of the complaints made against Taylor. *See Buckler v. Israel*, 680 F.

[5] Querisma alleges "[t]he intimidation of litigants is a persistent well settled standard operating procedure and not an isolated event" (Doc. 15-1 at 2), but there are no facts to support that conclusory allegation.

App'x 831, 835 (11th Cir. 2017) (rejecting *Monell* claim where plaintiffs did not cite "to any instances in which there was a finding of excessive force or other misconduct and the [sheriff] failed to take corrective action"); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (finding ten citizen complaints about police officer did not provide city with adequate notice of past misconduct because the plaintiff never demonstrated the past complaints "had any merit" and "the number of complaints bears no relation to their validity"); *Barbosa v. Adkinson*, 2026 WL 2236939, at *11 (N.D. Fla. July 31, 2026) (allegation that sheriff's office had "been the defendant in at least 70 lawsuits, at least 7 of which allege intimidation and/or retaliation" was "insufficient to establish the existence of a widespread custom or policy of unconstitutional conduct because there is no indication that those suits relate to similar constitutional violations or that any of those suits were found to have merit").

Fourth, Querisma suggests he filed a complaint about Taylor's conduct after their encounter at the gas station, but he never heard back from the City. However, standing alone, that complaint is insufficient because any actions the City took, or failed to take, after the gas station incident could not have caused the incident. *See Baker v. Clements*, 2018 WL 11214862, at *8 (N.D. Ga. May 30, 2018) ("The City's failure to discipline the Officers could not have been the moving force behind the alleged violation since it occurred *after* the violation."); *Fox v. Van Oosterum*, 987 F. Supp. 597, 604 (W.D. Mich. 1997) (argument that sheriff's decision not to

investigate, made after the alleged violation took place, somehow caused the violation "defies logic").

Based on the foregoing, and even assuming Taylor committed a First Amendment violation, Querisma has not alleged facts which plausibly suggest the City is liable for that violation.

**IV. Conclusion**

The Court previously advised Querisma of the legal standards applicable to his claims and gave him an opportunity to file an amended complaint. Querisma's amended complaint, however, still fails to state a claim—namely, he has failed to allege facts indicating Taylor violated the First Amendment or that the City could be liable for any such violation. Because Querisma has failed to cure the deficiencies in his prior complaint through amendment, this case should be dismissed with prejudice. *See Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to amend his complaint before the court dismisses the action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is RECOMMENDED that:

1. The City's motion to dismiss (Doc. 17) be GRANTED.

2. Querisma's amended complaint (Doc. 15) be DISMISSED with prejudice.

3. The clerk close the file.

At Pensacola, Florida, this 26th day of October, 2026.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.